## EX PARTE A. L. SHULTS.

No. 17366.   Delivered January 2, 1935.
Reported in 77 S. W (2d) 877.

The opinion states the case.

*Currie McCutcheon,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—This is an appeal from an order denying bail.

Indicted for murder, appellant sought bail, which was de-

nied. The Constitution of Texas, sec. 11 art. 1, commands that bail be granted in all save capital cases, when the proof is evident. In his Annotated Constitution, on page 109, Mr. Harris cites half a hundred cases supporting the proposition that though the trial court may have denied bail, if the proof is not "evident" to the judges of this court, they should order the allowance of bail. What does "evident" mean? "Evident" to the minds of the members of this court, that the man before us, with a cool and deliberate mind and formed design, maliciously slew the man he killed, and that upon a hearing, on the facts before us, a dispassionate jury would not only convict, but would assess the death penalty.

We can not so conclude. We have searched this record for testimony showing that the mind of this appellant was cool and deliberate on the occasion of this homicide, but have not found such. The arresting officer smelled whisky on appellant's breath a few minutes after the shooting. All the witnesses agreed that they had never before seen appellant as he was on that day, one saying he was pale as a ghost, another that his eyes were glassy, another that he was abnormal. The proof shows that immediately preceding the shooting of deceased appellant twice shot, without provocation, at negroes in the basement of the hotel. That he was walking around down there waving a pistol back and forth, ordering the negroes to line up, ordering deceased, when he came down to see what the trouble was, to line up with the negroes,—is without any dispute. When deceased remonstrated with him, telling him that if he was "over-balanced" to go home, appellant refused to go, and charged deceased with not paying him as much salary as he ought, and then fired the pistol shooting deceased in the groin. It is undisputed that appellant then threw his arm around the shoulder of deceased and begged him to tell that he, appellant, was drunk and did not know what he was doing, and that he did not intend to shoot him.

The only fact or circumstance found in the record, aside from those immediately surrounding the killing, which sheds any light at all upon appellant's mental condition,—if it does,— is that Miss Lewis testified that a couple of months before the homicide she saw appellant, who was drinking, and he said to her "I could kill that s—of—a—b. He could raise my wages if he wanted to, referring to deceased. This witness detailed nothing as to the tone, manner or surroundings of the statement. We do not know whether it was angrily said, or said in such a manner as to denote ill-will. The evil of most statements or

accusations lies in the tone and manner and not in the words. Miss Lewis said further that as far as she knew appellant and deceased were good friends. She also testified that when deceased spoke to appellant he always called him Son. Further she said, about October 10th Mr. Williams wrote a letter to get appellant a permit to carry a pistol in which he stated that appellant had a fine character, was not a drinking man, and was such a man as would do to commission to carry a pistol. She saw the letter. She also said she saw appellant about twenty minutes before he shot Mr. Williams on the occasion in question, and that appellant was as pale as a ghost,—as white as a sheet. She had never seen him look like that before. Another witness said the way appellant carried on was entirely different from the way he talked and acted on other days; that on the day of the killing he was abnormal. We do not know what the testimony will show as to the condition of appellant's mind further, but we are compelled to conclude from the testimony before us that the evidence shows that appellant was not at himself; that he was not cool and deliberate, but that in all of his words and actions he showed himself to be in an abnormal condition.

The judgment is reversed and bail is granted in the sum of Seventy-five Hundred Dollars.

*Reversed and bail fixed.*