Ex parte Charles Elton WILSON.

Ex parte Chris Phillip KIBBE.

No. 50513.

Court of Criminal Appeals of Texas.

Sept. 23, 1975.

Goodwin & Hawthorn, Beaumont, for Wilson.

James S. McGrath, Beaumont, for Kibbe.

Tom Hanna, Dist. Atty., Beaumont, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

These are appeals from an order of the Criminal District Court of Jefferson County denying appellants' applications for a writ of habeas corpus and refusing the appellants' applications for bail. Appellant Charles Elton Wilson and appellant Chris Phillip Kibbe both stand indicted for the offense of capital murder.

The Constitution of the State of Texas, Art. 1, Sec. 11, and the Code of Criminal Procedure, Art. 1.07, both provide that all prisoners are entitled to bail except those charged with a capital offense "when the proof is evident."

■ The term "proof is evident" means that the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense of capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted but that the jury will return findings which will require a sentence of death. *Ex parte Sierra*, 514 S.W.2d 760 (Tex.Cr.App.1974); *Ex parte Forbes*, 474 S.W.2d 690 (Tex.Cr.App. 1972); *Ex parte Short*, 462 S.W.2d 281 (Tex. Cr.App.1971); *Ex parte Colbert*, 452 S.W.2d 454 (Tex.Cr.App.1970); *Ex parte Collins*, 168 Tex.Cr.R. 500, 330 S.W.2d 194; *Ex parte Thrash*, 167 Tex.Cr.R. 409, 320 S.W.2d 357; *Ex parte Washburn*, 161 Tex.Cr.R. 651, 280 S.W.2d 257; *Ex parte Roberts*, 151 Tex.Cr.R. 547, 209 S.W.2d 361; *Ex parte Suger*, 149 Tex.Cr.R. 133, 192 S.W.2d 159; *Ex parte Shults*, 127 Tex.Cr.R. 484, 77 S.W.2d 877. See generally 7 Tex.Jur.2d, Rev., Part 2, Bail and Recognizance, Secs. 16–22.

■ The burden of proof is on the State to establish that the proof is evident. *Ex parte Sierra*, supra; *Ex parte Forbes*, su-

pra; *Ex parte Short*, supra; *Ex parte Paul*, 420 S.W.2d 956 (Tex.Cr.App.1967). The State must introduce evidence that the jury would not only convict the accused, but would return findings which would require a sentence of death. *Ex parte Sierra*, supra; see Art. 37.071, V.A.C.C.P.

■ It is the firmly established policy of this Court to refrain from setting out the facts in detail or commenting on the sufficiency of the evidence since the case has not yet been tried on the merits. *Ex parte Sierra*, supra; *Ex parte Paul*, supra.

■ The decision of the trial judge that the proof was evident is entitled to weight on appeal, but it is the duty of this Court to examine the evidence and to determine for ourselves if bail was properly denied. *Ex parte Hickox*, 90 Tex.Cr.R. 139, 233 S.W. 1100.

The record before us reflects that the body of Frank Graffagnino was found buried in a shallow grave in a wooded area of Jefferson County in mid May, 1975. An examination of the body disclosed bruises, a fractured leg, and fractured ribs. The cause of death was suffocation resulting from the aspiration of the stomach contents.

The State introduced evidence that would link the appellants to the death of Frank Graffagnino. The record could circumstantially support the State's allegations of kidnapping. Motive is shown by an affidavit that indicates that the deceased was having an affair with the wife of the appellant Kibbe.

■ In order for the sentence of death to be imposed, there must first be a conviction of capital murder. The State must then prove beyond a reasonable doubt that: (1) The conduct of the accused that caused the death of the deceased was committed deliberately and with the reasonable expectation the death of the deceased or another would result; (2) There is a probability that the accused would commit criminal acts of vio-

lence that would constitute a continuing threat to society; (3) If raised by the evidence, that the conduct of the accused in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975).

■ We have carefully reviewed the record before us and cannot conclude that the proof is "evident" that the jury would answer the required questions in the affirmative as required by Art. 37.071, V.A.C.C.P.

The judgment of the trial court in denying bail to the appellants is reversed. Appellant Charles Elton Wilson is granted bail in the sum of $20,000.00. The appellant Chris Phillip Kibbe is granted bail in the sum of $40,000.00.

Opinion approved by the Court.

DOUGLAS, Judge (dissenting).

The brief of the Honorable Tom Hanna, Criminal District Attorney of Jefferson County, in Kibbe's case is adopted as the dissenting opinion as to both Kibbe and Wilson to avoid duplication. With formal parts omitted it is as follows:

"The Trial Court did not err in denying Appellant's motion because the evidence herein amply supports its finding of 'proof evident' that a dispassionate jury will likely convict the Appellant of capital murder and assess his punishment at death.

"(1) There is ample uncontradicted evidence to sustain the Court's finding that the deceased was kidnapped by Appellant and his co-party, Wilson.

"(2) There is ample uncontradicted evidence to support the Court's finding that there is proof evident that the Appellant is guilty of capital murder.

"(3) There is ample evidence to sustain the Court's finding that a dispassionate jury will assess the Appellant's punishment at death.

*"ARGUMENT AND AUTHORITIES*

" '(1) There is ample uncontradicted evidence to sustain the Court's finding that the deceased was kidnapped by Appellant and his co-party, Wilson.'

"Our law provides that no person may be denied bond, except in capital cases where the proof is evident. Constitution Article I, Section 10; Article 1.07 Code of Criminal Procedure. The only capital offense provided under our law at the present is capital murder as defined in Section 19.03 of the Penal Code and as procedurally implemented by Article 37.071 of the Code of Criminal Procedure. This statute is constitutional and enforceable. *Jurek v. State*, 522 S.W.2d 934 ( # 49416, Cr.App.1975).

"Capital murder is committed when one intentionally or knowingly causes the death of an individual while in the course of committing or attempting to commit kidnapping. Section 19.03(a)(2), Penal Code.

"Kidnapping is defined as the intentional or knowing abduction of another. Section 20.03, Penal Code. If that abduction is done with the intent to inflict bodily injury on the victim to facilitate the commission of a felony, or to terrorize the victim or another, then the offense becomes aggravated kidnapping. Article 20.04. The indictment in this case alleges murder while in the commission of aggravated kidnapping with intent to inflict bodily injury and with intent to facilitate the murder of Frank Graffagnino (R. 191–192).

" 'Abduction' is defined as 'restraining' a person with the intent to prevent his liberation by (1) hiding him in a place where it is not likely to be found, or (2) using or threatening to use deadly force. Section 20.01(2)(A)(B). 'Restraint' is defined as restricting a person's movement so as to substantially interfere with his liberty, by moving that person from one place to another, or by confining that person. The restraint lacks consent if it is accomplished by force, intimidation, or deception. Section 20.-01(1)(A), Penal Code.

"The evidence shows, without contradiction that Frank Graffagnino was restrained by force and was abducted by secreting and hiding by Appellant and his co-conspirator Charles Elton Wilson.

"Witness Carolyn Dixon testified that she heard a muffled, scared voice begging or crying (R. 16–17), that she saw movements that led her to believe that Appellant and Wilson were loading something into the rear (trunk) of Appellant's auto at sometime after 10:30–11:00 p. m. on February 26, 1975, (R. 16–18) that they had trouble closing the trunk (R. 18) and that after the trunk was closed she heard one of the co-conspirators ask 'if she or he could breathe?' (R. 25).

"Witness Joe Dorman testified that at approximately 1:00–2:00 a. m. on February 27, 1975, the Appellant and Wilson came to his house in Appellant's auto (R. 28–29), that Appellant asked if 'they could come inside' and told the witness that 'I have Frankie in the car and I have just whipped his ass.' (R. 31, 54, 60, 70), that Wilson urged Appellant to leave and that they left together (R. 31), that they returned that same day at about 3:00 p. m. in Wilson's truck and the witness was told by Appellant to 'forget about last night,' them coming by, or he would be next (R. 34), that the two returned that night about midnight and forced the witness to drive them to the place where the body of the deceased was ultimately found, where he let them out, and picked them up an hour later (R. 36–47).

"The witness Kenneth Dixon testified that he observed Wilson and Appellant dragging someone into Wilson's house involuntarily (R. 78–81), that something resembling a body was placed in the trunk of Appellant's car (as earlier described by the wife) and the trunk was closed (R. 87). This witness also heard the remark made by Appellant asking if 'he' or 'she' could breathe (R. 87). He also saw them drive off in the early morning hours of the 27th of February.

"Finally, Witness Calise Blanchard testified that when the body of deceased was found he was nude except for pants pulled down around his ankles which were bound with a rope (R. 132). The body was found where Dorman took officers and described letting off Appellant and Wilson.

"The net effect of the evidence is to establish that Appellant and Wilson, acting together as parties (Sec. 7.02, Penal Code [1]) and as co-conspirators restrained, abducted, and kidnapped Frankie Graffagnino, secreted him in Defendant Wilson's home and Appellant's auto trunk, tied him with ropes and inflicted bodily injury on him. This evidence is uncontradicted and is sufficient to prove aggravated kidnapping as alleged in the indictment.

" '(2) There is ample uncontradicted evidence to support the Court's finding that there is proof evident that the Appellant is guilty of capital murder.'

"In addition to the requirement that aggravated kidnapping be shown as outlined above, the State must show that there is proof evident that the Appellant will be found guilty of capital murder.

" 'Proof evident' has been defined in many cases and Texas law seems settled that it means that the State has the burden of proving that 'the accused, with cool and deliberate mind and formed design, mali-

1. Sec. 7.02. Criminal Responsibility for Conduct of Another.
    (a) A person is criminally responsible for an offense committed by the conduct of another if: . . .
        (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or . . .

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

ciously killed the deceased and that upon a dispassionate hearing of the facts before the Court a jury would upon such evidence, not only convict but would assess the death penalty.' *Ex parte Short*, 462 S.W.2d 281 (1970); *Ex parte Forbes*, 474 S.W.2d 690 (1972); *Ex parte Sierra*, 514 S.W.2d 760 (1974).

"The evidence, again uncontradicted and without any evidence of a defense or extenuating circumstances supports such a cool, deliberate, intentional murder.

"The testimony of Dorman again shows that the two actors had 'Frankie' (R. 31, 53, 54, 60, 70), took Dorman to the place where the body was ultimately found (R. 37–43), spent about one hour alone in the woods where the body was found (R. 39–40), were spent and tired when picked up (R. 40–41), and Appellant stated as they drove away, 'May he rest in peace' (R. 41).

"In addition, the testimony of Blanchard confirms Appellant's assertion that he had 'whipped his ass' by showing that the deceased had multiple bruises on his hand, chest and back, had a compound fracture of the left leg, had five ribs broken from the sternum, and had X marks cut into his buttocks. (R. 132–134).

"Cause of death was shown to be asphyxia due to compression of the chest and aspiration of gastric contents (R. 136). This is entirely consistent with the wounds described above and great pressure being applied to the sternum.

"The attempt to hide the crime is admissible and probative evidence of the intent of the parties to kill the deceased and to escape detection.

"The evidence concerning the extent of the injuries has been held to be probative of the 'cruel and deliberate mind' of the Defendant and shows malice. *Ex parte Roberts* [169 Tex.Cr. 311], 334 S.W.2d 171 (1960).

"The lack of motive cited by Appellant as grounds for mitigation shows instead the barbarity of the attack and may be con-

sidered by the Court as the presence of malice. See *Ex parte Gibson* [149 Tex.Cr.R. 573], 197 S.W.2d 543 (1946). *Roberts,* cited above, also points out that the sheer ferocity of the assault may be considered by the Court in determining whether the offense is bailable. It should further be noted when assessing this testimony that the deceased and Kibbe were considered friends (R. 53).

"Finally, the threats leveled at the witness Dorman (R. 33–35; 42; 45–46; 51; 54–55; 57–58; 59–60; 62, 63; 66–67) are proof of the intent of the parties to have their way with the deceased and escape detection by placing the known witness in fear (R. 63, 64; 66–67). Appellant cannot contend that these were made by Wilson and without his knowledge or consent since they were made by him, and were part and parcel of the conspiracy during its execution.

"There is absolutely no evidence of any defense, and excuse, or any extenuation of the circumstances. Where no such evidence exists, and where there is evidence of a capital murder, the discretion of the Trial Judge should not be disturbed since no abuse is shown. *Ex parte Smithwick* [154 Tex.Cr.R. 105], 225 S.W.2d 107, [187] (1950); *Ex parte Cogdell* [157 Tex.Cr.R. 187], 247 S.W.2d 888 (1952).

"In conclusion, the evidence shows that the Appellant, alone or in concert with Wilson, deliberately, maliciously, and intentionally beat and stomped the deceased to death while he was a kidnapping victim as alleged in the indictment.

" '(3) There is ample evidence to sustain the Court's finding that a dispassionate jury will assess the Appellant's punishment at death.'

"The test required for assessing the death penalty is now incorporated into Article 37.071, Code of Criminal Procedure. The three questions that are to be propounded are adequately covered by the evidence here.

"First, see the discussion under (2) above as to the intentional nature of the killing and the lack of evidence to the contrary.

"Second, the evidence shows Appellant to be an adult male in his 20's (R. 27), that he had no motive other than personal satisfaction in what was being done, and that he willingly participated in the restraint, abduction, beating, burial, and attempt to elude detection. The nature of the offense itself is eloquent evidence of the propensity of this Appellant for violence and is ample ground to justify the Court's finding that a jury would likely find this man a 'probable' candidate to repeat. *Jurek v. State,* supra.

"The threats made to Dorman and the obvious fear evidenced by this witness who knew both Appellant and Wilson is further proof of the likelihood that this Appellant would probably be a future danger to society and is probative evidence to support the Court's finding (R. 46, 66).

"Third, there is no evidence in this Record to support the submission of provocation on the part of the deceased.

## CONCLUSION

"There is ample evidence to support the Court's finding that proof evident existed that the Appellant would be found guilty of capital murder in the commission of kidnapping as alleged in the indictment and would have the death penalty assessed."

The judgments should be affirmed.