**Ex parte Becky HAMMOND.**

**No. 53011.**

Court of Criminal Appeals of Texas.

Sept. 7, 1976.

Michael D. Matheny, Beaumont, Bill F. Griffin, Center, for appellant.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This an appeal from an order entered in a habeas corpus proceeding in the 123rd District Court denying the appellant bail.

The appellant was indicted on July 12, 1976, for the capital murder of her husband. The indictment, omitting the formal parts, alleged that on or about June 19, 1976, Tony Bohannon and the appellant "did then

and there unlawfully, intentionally and knowingly cause the death of Earl Hammond by employing for remuneration and the promise of remuneration, to-wit, the sum of over $10,000.00 paid and promised to be paid to Billy J. McMahon and Bobby F. McCormick, to kill the said Earl Hammond by shooting him with a gun."

On July 21st the habeas corpus application was filed asking that bail be set. On the same date the court conducted a hearing on said application. The evidence established that Earl Hammond was found shot in the garage of his home on June 19, 1976. He had been shot by both a .32 caliber pistol and a 12 gauge shotgun.

The record reflects that on June 21, 1976, the appellant was taken into custody by the sheriff of Shelby County and given *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), warnings, which warnings also complied with Article 38.22, Vernon's Ann.C.C.P. Shortly thereafter, she was taken before a magistrate, who gave her warnings in accordance with Articles 15.17 and 38.22, Vernon's Ann.C.C.P.

The State offered evidence that on June 22, 1976, during an interview, the appellant had admitted she and Bohannon "had gotten together and developed a plan for getting her husband killed." The objection that this was an oral confession not admissible under Article 38.22, Vernon's Ann.C.C.P., was sustained. It was shown that her statements were not reduced to writing because the interview was interrupted by Attorney Bill Griffin, who had been appointed by the court to represent the appellant.[1] Over objection the written statement or confession of Tony Bohannon was introduced through the testimony of a district attorney's investigator. Appellant's counsel objected, noting that the appellant was being denied the right of confrontation and that the confession of a co-defendant should not be admitted against the appellant. The objection was overruled.

The State then proved that Attorney Griffin had advised the appellant of her rights after he had interrupted the interview with the law enforcement officers. Through the testimony of Deputy Sheriff Phillip Baker, it was established that about 7:15 p. m. on June 23, 1976, he had a conversation with the appellant in jail in which she requested a pen and paper. He gave her the same, including a printed top sheet containing the warnings required by *Miranda* and Article 38.22, supra. The evidence shows she completed the eight page (seven handwritten pages) confession by 10 p. m. The same was introduced into evidence. It recites at some length the beating of the appellant by the deceased and other abuses, including beating of one of the children, temper fits, and threats by the deceased to kill the appellant if she ever left him. She related that she began to confide in Tony Bohannon and that he had several ideas about disposing of the deceased, and talk of hiring his "cousin" to do the job. She related she went along with Bohannon because she could see no other way out. It appears that Bohannon took $2,000 from the appellant and other money "from the store" to pay the killers.

The only question before this court is whether the appellant is entitled to bail.

Article I, Section 11 of the State Constitution and article 1.07, Vernon's Ann.C.C.P., both provide that all prisoners are entitled to bail except those charged with a capital offense "when the proof is evident."

■ "The term 'proof is evident' means that the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense of capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted but that the jury will return findings which will require a sentence of death." *Ex parte Wilson,* 527 S.W.2d 310 (Tex.Cr.App.1975), and numerous cases there cited.

■ The burden of proof is on the State to establish that the proof is evident. *Ex parte Wilson,* supra; *Ex parte Sierra,* 514 S.W.2d 760 (Tex.Cr.App.1974); *Ex*

---

1. The record reflects that since that time counsel has been retained.

*parte Forbes,* 474 S.W.2d 690 (Tex.Cr.App. 1972); *Ex parte Paul,* 420 S.W.2d 956 (Tex. Cr.App.1967). This burden requires the State in hearings of this nature not only to introduce evidence that the jury would convict the accused but would return the findings required under Article 37.071, Vernon's Ann.C.C.P., which would require the imposition of the death sentence. See *Ex parte Wilson,* supra; *Ex parte Sierra,* supra.

■ While the decision of the trial judge that the proof is evident is entitled to weight on appeal, nevertheless it is the duty of this court to examine the evidence and determine if bail was properly denied. *Ex parte Wilson,* supra; *Ex parte Hickox,* 90 Tex.Cr.R. 139, 233 S.W. 1100 (1921).

The record before this court reflects that the body of Earl Hammond was found shot numerous times in the garage of his home. One of the bullet wounds was to his head.

■ The court sustained the objection to appellant's oral confession, and the admission of a co-defendant's confession, over objection, was erroneous. Normally a confession of guilt can only be used against the person giving the confession and is inadmissible against others under the hearsay rule. *Carey v. State,* 455 S.W.2d 217, 220 (Tex.Cr. App.1970), and cases there cited.

The State did offer the handwritten extrajudicial confession of the appellant in which she recited the abuses by the deceased of her and one of the children, threats by the deceased, her fear of him, etc., as well as her involvement with Bohannon in planning to dispose of the deceased as she "could see no other way out."

■ In order for the death sentence to be imposed there must first be a conviction for capital murder. The State must then prove beyond a reasonable doubt that: (1) the conduct of the accused that caused the death of the deceased was committed deliberately and with the reasonable expectation the death of the deceased or another would result; (2) there is a probability that the accused would commit criminal acts of violence that would constitute a continuing threat to society; (3) if raised by the evidence, that the conduct of the accused in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.[2] See Article 37.071, supra; *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); *Ex parte Wilson,* supra.

■ We have carefully reviewed the record before us and cannot conclude that the "proof is evident" that the jury would answer the required questions in the affirmative as required by Article 37.071, supra.

The judgment of the trial court in denying bail to the appellant is reversed. Bail is set in the amount of $50,000.

DOUGLAS, J., not participating.

2. It is interesting to note that in footnote # 7 of *Jurek v. Texas,* —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d —— (1976), in which the United States Supreme Court upheld the Texas statutory scheme for the imposition of the death penalty in capital murder cases the Court wrote:

"The Texas Court of Criminal Appeals has not yet construed the first and third questions (which are set out in the text at 2954–2955, *supra* ); thus it is as yet undetermined whether or not the jury's consideration of those questions would properly include consideration of mitigating circumstances. In at least some situations the questions could,

however, comprehend such an inquiry. For, example, the third question asks whether the conduct of the defendant was unreasonable in response to any provocation by the deceased. This might be construed to allow the jury to consider circumstances which, though not sufficient as a defense to the crime itself, might nevertheless have enough mitigating force to avoid the death penalty—a claim, for example, that a woman who hired an assassin to kill her husband was driven to it by his continued cruelty to her. We cannot, however, construe the statute; that power is reserved to the Texas courts."