**Ex parte Clarence Allen LACKEY.**

**No. 56147.**

Court of Criminal Appeals of Texas.

Dec. 14, 1977.

Appellant's Motion for Rehearing Denied Jan. 18, 1978.

Brown & Brown, McClendon, Richards & Campbell, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., and Phil Gamble, Asst. Crim. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from an order entered in a habeas corpus proceeding in the 137th District Court denying the appellant bail.

The record reflects that appellant was indicted for capital murder on August 3, 1977, and is being held without bail for the murder of Toni Diane Kumpf.

The record shows that the deceased's apartment was located at 1001 Avenue W in Lubbock, and that officers were called to this apartment to investigate a burglary and possible kidnapping during the early morning hours of July 31, 1977. The front door of the residence had apparently been kicked open, as the door facing had been torn from the wall and part of it was on the floor and part was hanging from the night latch chain on the door. The bed inside the apartment looked as if it had been slept in and there were overturned lamp and flower pots inside the apartment which indicated that a struggle had taken place. Later on that same day, the body of the deceased was found on a dirt road in Lubbock County. The deceased's throat had been slashed

and examination revealed that there had been vaginal sexual intercourse within the past 36 to 48 hours.

The investigation revealed that the appellant, who was a suspect, drove a 1968 to 1971 model white fleetside pickup truck with a heavy duty bumper, vertical taillights, and missing either one or two hubcaps. A pickup matching that description was parked in front of the appellant's residence at 1216—83rd Street in Lubbock when officers arrived to search his residence. This pickup had human blood on both the passenger's and driver's sides of the seat. This blood was insufficient to determine the type, but blood directly below the seat was found on examination to be Type A. This was the same as the deceased's blood type.

A search of appellant's residence conducted at that time led to discovery of blood on the front porch area and inside the residence on a throw rug beside the bed, a chair, the mattress-box springs, and a heavily stained mattress located in the rear bedroom. Examination revealed the blood samples all to be of human origin and to be Type A, the deceased's blood type. A butcher knife was also located and found to have human blood on it in an insufficient amount to determine the blood type. Hair samples were also found in appellant's house. A comparison with samples from the deceased indicated that the hair could have come from the deceased.

A postmortem examination of the deceased revealed the presence of spermatozoa and acid phosphate. From this the chemist concluded that sexual intercourse had taken place some time before or after the death of the victim. Further tests showed that the person who had intercourse with the deceased was of blood Type O, the same type as that of the appellant.

Further examination of the deceased revealed extraneous hair located on her body. A comparison revealed that it was very similar to the appellant's hair. The opinion of the forensic chemist was that it could have come from the appellant.

The record also reflects that when the appellant was arrested he was wearing boots with specks of blood found on the inside of his left boot. The blood was found to be of human origin and its type matched that of the deceased. Further, a package of Marlborough cigarettes was found in the victim's apartment and the evidence shows that the appellant smoked this brand of cigarette on the date of his arrest.

In *Ex parte Wilson*, Tex.Cr.App., 527 S.W.2d 310, 312, we stated:

"In order for the sentence of death to be imposed, there must first be a conviction of capital murder. The State must then prove beyond a reasonable doubt that: (1) the conduct of the accused that caused the death of the deceased was committed deliberately and with the reasonable expectation the death of the deceased or another would result; (2) There is a probability that the accused would commit criminal acts of violence that would constitute a continuing threat to society; (3) If raised by the evidence, that the conduct of the accused in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975)."

In reviewing the evidence as heretofore set out we conclude that the proof is evident that the jury would answer the required questions in the affirmative as required by Article 37.071, V.A.C.C.P. Here, unlike *Ex parte Derese*, Tex.Cr.App., 540 S.W.2d 332, not only do we have a finding by the trial court that there was a probability that the accused would commit acts of violence that would constitute a continuing threat to society, but also evidence of a criminal record was offered to show a violent nature of the appellant. The record shows that appellant was placed on probation for burglary in 1973. Thereafter, he was convicted of burglary *with intent to commit rape* in January 1975. His sentences ran concurrently and he was discharged from prison in February 1977. Only five months after having been discharged from prison the record shows that

appellant was charged with the instant crime which arose out of yet another burglary with intent to commit rape.

Having concluded that the State met its burden to show "proof evident," we hold that the trial court did not abuse its discretion in denying bail.

VOLLERS, J., not participating.