**Ex parte Michael Dewayne STEARNES.**

**Nos. 07–87–0267–CR, 07–88–0021–CR.**

Court of Appeals of Texas, Amarillo.

May 18, 1988.

Carlton McLarty, McLarty & McLarty, Lubbock, for appellant.

Travis Ware, Criminal Dist. Atty., Michael West, Asst. Criminal Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Appellant Michael Dewayne Stearnes, denied bail after being indicted for the capital offense of intentionally and knowingly murdering Napoleon Ellison, Quinnie Smith, and Vivian Webb during the same criminal transaction, applied for a writ of habeas corpus to be admitted to reasonable bail. After an evidentiary hearing, the trial court, being of the opinion that the State met its burden by proof evident, ordered that bail is denied. Appellant's appeal from the denial was docketed as cause no. 07–87–0267–CR.

Some two months following the denial, appellant, alleging the discovery of new evidence, again applied for a writ of habeas corpus to be admitted to reasonable bail. After another evidentiary hearing, the trial court, still being of the opinion that the State met its burden of proof evident, again ordered that bail is denied. Appellant's appeal from the second denial was docketed as cause no. 07–88–0021–CR.

The two appeals were consolidated for submission. In both appeals, appellant advances the same two contentions: the trial court erred in finding the proof evident (1) to sustain a conviction for the offense of capital murder, and (2) that he would receive the death penalty. On the rationale expressed, the two points of error will be overruled and the judgment will be affirmed in cause no. 07–87–0267–CR, but the first point of error will be sustained, the judgment will be reversed, and the cause will be remanded in cause no. 07–88–0021–CR.

*Generally*

Appellant is charged by indictment with capital murder. Tex.Penal Code Ann. § 19.03(a)(6)(A) (Vernon Supp.1988). Article I, section 11, of the Texas Constitution provides that "[a]ll prisoners shall be bailable ... unless for capital offenses, when the proof is evident." The State carries the burden of showing that the proof is evident. *Ex parte Sierra*, 514 S.W.2d 760, 761 (Tex.Cr.App.1974). To show that the proof is evident, the State must introduce evidence that the jury not only would convict the accused, but would return findings which would require a sentence of death. *Ex parte Wilson*, 527 S.W.2d 310, 311 (Tex. Cr.App.1975); *Ex parte Sierra, supra.*

In these appeals, the trial court's finding of proof evident is entitled to weight, but it is also this Court's duty to independently determine from an examination of the evidence whether bail was properly denied. *Ex Parte Wilson, supra.* In honor of the caution not to set forth the evidentiary facts in detail or to comment on the sufficiency of the evidence since the case has yet to be tried on the merits, *id.,* only a

skeletal summary of the evidence sufficient to position and address appellant's two points of error will be recorded.

*Cause No. 07-87-0267-CR*

At the first hearing underlying the initial appeal, the testimony was given by, and exhibits were introduced through, three witnesses called by the State. Detective Roger Ellis testified to arriving at a home in east Lubbock and observing the bodies of Napoleon Ellison, Quinnie Smith, and Vivian Webb. Ellison's body was in the front room; Smith's and Webb's bodies were in the northeast bedroom. All three had suffered multiple gunshot wounds. It appeared to Ellis that at least two weapons, a shotgun and a nine millimeter firearm, had been used in the murders. Investigation resulted in individual capital murder indictments against Damon Richardson, Rodney Childress, Lambert Wilson, and appellant.

Anita Hanson testified that she heard Richardson say he "was going to get Napoleon," and later on the day of the murders, she heard him say, when appellant was present, that he was going to kill Napoleon and his whole family. She told Richardson to take her home.

Hanson got in a car with Wilson and appellant to be taken home. She gave a negative answer when Wilson, who was driving, asked if she minded if he went somewhere before he took her home. They drove to the vicinity of Ellison's home and parked.

Wilson told Hanson to stay in the car. Appellant, armed with a "long gun," and Wilson walked toward Childress, who was standing on the corner near Ellison's house. The three walked around the corner toward the house.

Wondering what happened, Hanson got out of the car, heard a shot, and ran into Ellison's house. She saw Richardson and Wilson standing in front of Ellison, who had been shot and was dead. According to one of Hanson's written statements introduced into evidence,

> Damon Richardson had a small pistol in his hand and Lambert [Wilson] had what looked like a machine-gun. Damon asked me why I didn't stay in the car and about that time I heard Tony [appellant] yell for Damon to come where he was. Tony was in the back bedroom with Napoleon's [Ellison's] mom and boyfriend, along with Rodney [Childress]. Tony killed Napoleon's mom and boyfriend and Damon made Rodney shot [*sic*] Napoleon's mom. When they came out of the bedroom Tony had the shotgun, Damon had the pistol, and I didn't see Rodney with a gun. I asked Rodney what had happened and he told me not to go back there because he had killed Napoleon's mom.... Just as Damon was walking out the door, he turned to me and said that he would kill me if I told anybody about what had happened....

Hanson admitted that she had given five different statements to the police, that she had lied under oath about some collateral matters, and that she did not tell the police a lot of things. When asked if she was an actual participant, with knowledge, and helped the others kill the people, she denied it.

Detective C.W. Hudgins testified that he was familiar with the fact that appellant goes by the name of "Tony." Acknowledging his familiarity with appellant's reputation in the community for being a peaceable and law abiding citizen, Hudgins said that reputation was bad.

██ The thrust of appellant's first-point contention is that Hanson was an accomplice witness whose testimony was not corroborated and, absent corroborative evidence, his guilt cannot be said to be evident. *Ex parte Mitchell,* 601 S.W.2d 376, 377 (Tex.Cr.App.1980). The contention is not persuasive under the evidence recorded in the first hearing.

Hanson would be an accomplice, and thereby criminally responsible for the conduct of another, only if she "act[ed] with intent to promote or assist the commission of the offense" and "solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid [appellant] to commit the offense." Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974). Thus, she would be an accomplice

only if she could be prosecuted for the murders with which appellant is charged. *Smith v. State,* 721 S.W.2d 844, 851 (Tex. Cr.App.1986).

There is nothing in this record to show that Hanson is criminally responsible for appellant's conduct. The most this record shows is that she heard the proposed murders discussed without then disclosing the information, and was present at the scene of the murders, certain details of which she concealed or did not reveal in her statements to the police. But these circumstances do not make her an accomplice; consequently, the trial court cannot be faulted for implicitly finding from the evidence that she was not an accomplice and accepting her testimony without corroboration. *Id.* The first point is overruled.

◼ Under his second-point contention, appellant argues that the proof is not evident that he would receive the death penalty because the State failed to show he has any type of a criminal record and to produce any psychiatric evidence warranting an inference that he would be a continuing threat to society. However, neither a prior criminal record nor psychiatric testimony is a prerequisite to a finding that appellant would constitute a continuing threat to society; the circumstances of the offense itself, if severe enough, can sustain the finding. *Ex parte Alexander,* 608 S.W.2d 928, 930 (Tex.Cr.App.1980).

Beyond the circumstances of the offense itself, the trial court was entitled to consider, as additional factors bearing on the determination whether appellant will pose a continuing threat of violence to society, the evidentiary facts of the deliberate planning of multiple murders, the coordinated action of preparation and execution, and the absence of duress compelling appellant's actions. *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App.1987). Given this record and considering the weight to be given the trial court's decision, it is concluded that the court did not err in finding proof evident that appellant will be a continuing threat to society. The second point is overruled.

The judgment is affirmed.

### *Cause No. 07-88-0021-CR*

◼ At the later hearing on appellant's second application for bail, Detective Ellis affirmed that Hanson "provides the only link, the only evidence at this time that Michael Dewayne Stearnes was involved in the murders." Hanson, giving testimony different from that she gave at the first hearing and consistent with a written statement she executed a week after the first hearing, said, in response to questions, that:

> When I walked in, Damon came toward me and asked me what I was doing in the house.
>
> Damon went to the back, and that is when I saw Napoleon. He asked me would I help him, and he was bleeding from the chest.
>
> \*   \*   \*   \*   \*   \*
>
> I asked Damon if we could call a doctor, and he told me "no."
>
> He said that if Napoleon lived, that we would all go to jail.
>
> \*   \*   \*   \*   \*   \*
>
> He went to Lambert and got the uzi from him, and he walked over there to me, handed me the uzi and told me to shoot Napoleon.
>
> I told him that I didn't want to.
>
> He told me that I was to shoot Napoleon or he would shoot me.
>
> \*   \*   \*   \*   \*   \*
>
> I shut my eyes and shot the gun.

In her written statement, Hanson said, "So, I shot Napoleon."

Queried about her first-hearing testimony that Ellison was dead when she entered the house, Hanson further testified, in reference to her latest account, that:

> I guess I always knew that he was alive, but I didn't want to remember, because I didn't want to think that I did it, and I was scared of Damon, I was scared of a lot of things when that happened.

An admitted exhibit, containing Hanson's testimony in another hearing on a habeas corpus application for bail filed by Richardson, carries Hanson's acknowledgment that

the criminal district attorney's office told her that she could be prosecuted for capital murder.

As previously noted, an accomplice witness is someone who participated with another before, during, or after the commission of a crime. *Smith v. State, supra,* 721 S.W.2d at 850–51. And without corroborative evidence of the accomplice's testimony, the proof of the accused's guilt cannot be said to be evident. *Ex parte Mitchell, supra,* 601 S.W.2d at 377.

Obviously, the evidence developed during this hearing at least raises the question whether Hanson was an accomplice, whose testimony needed corroboration. *Harris v. State,* 645 S.W.2d 447, 456–59 (Tex.Cr.App. 1983). Then, the question is a proper issue for submission to the jury. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Cr.App. 1987). Since the question whether Hanson was an accomplice is for the jury's determination, the court has no right to conclude that the finding of the jury issue might not be favorable to appellant. *Ex parte Lewellen,* 89 Tex.Cr.R. 57, 229 S.W. 326, 327 (1921). As a result, it cannot be said that the evidence is so evident that the jury would convict appellant and punish him capitally. *Cf. Ex parte Mitchell, supra,* 601 S.W.2d at 377 (uncorroborated testimony of an accomplice witness is insufficient to establish the proof evident necessary for denial of bail).

Nevertheless, the State argues that because Hanson's act of closing her eyes and merely shooting "at" Ellison can only be viewed as an involuntary response caused by subjection to the most extreme form of duress, she was not a willing participant and, therefore, she cannot be regarded as an accomplice. *Harris v. State,* 738 S.W.2d 207, 216 (Tex.Cr.App.1986) (quoting 25 Tex.Jur.3d *Criminal Law* § 3443 (1981)). However, as *Harris* illustrates, Hanson's testimony of what she did and why she did it is but a part of the evidence bearing on the question whether she was an accomplice, which is for the jury's determination. *Harris v. State, supra,* 738 S.W.2d at 217.

It follows that appellant's first point of error must be, and it is, sustained. The sustension makes it unnecessary to address appellant's second point, the resolution of which would not change the disposition of this appeal. Tex.R.App.P. 90(a).

Accordingly, the judgment is reversed, and the cause is remanded for the trial court to set bail in a reasonable amount.