**Ex parte Anthony Charles GRAVES, Appellant.**

**No. 01–92–01066–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 1993.

Rehearing Denied May 6, 1993.

---

**2.** We note that this analysis may be different in light of *Braden v. Downey*, 811 S.W.2d 922, 928– 29 (Tex.1991).

Dick DeGuerin, Houston, for appellant.

Charles J. Sebesta, Jr., Caldwell, Larry P. Urquhart, Brenham, for appellee.

Before O'CONNOR, HEDGES and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Appellant, Anthony Charles Graves, was indicted for capital murder and confined in

the Burleson County jail without bond. He filed in the trial court an application for writ of habeas corpus, seeking release on reasonable bail. Following an evidentiary hearing, the trial court denied bail. Appellant urges two points of error on this appeal. We affirm.

This Court has jurisdiction to hear this appeal pursuant to the general jurisdictional provisions of article V, §§ 5 and 6 of the Texas Constitution. *See Primrose v. State,* 725 S.W.2d 254, 255–56 (Tex.Crim. App.1987); *see also* TEX.R.APP.P. 44.

In the early hours of August 18, 1992, fire fighters were summoned to a residence fire in Somerville, Burleson County. After extinguishing the fire and examining the bodies of the six victims, it became apparent to investigators that there had been foul play. Fire inspectors smelled gasoline in the rooms where they found the victims. From the burn pattern, the investigators determined that an accelerant had been poured over the victims in the bedrooms. In addition, one wall of the residence had been blown out from the interior, an event usually caused by accelerant-started fires. Finally, investigators noticed multiple puncture wounds on all six victims, four of whom were under 10 years old. An autopsy confirmed that each victim sustained numerous stab or gunshot wounds, or both, about the head, shoulders and chest. The oldest victim suffered over 30 stab wounds; the teenager was shot five times in the head and stabbed four times. Appellant does not contest the investigators' findings of arson and murder. He does argue that the State failed to prove his connection with the murders sufficiently to deny bail.

■ The trial court found "proof evident" of a capital crime, and denied bail. TEX. CONST. art. 1, § 11. To establish "proof evident," the State has the burden to prove, by clear and strong evidence, leading to a well-guarded and dispassionate judgment, each element of a three-part test: (1) the offense of capital murder has been committed; (2) the accused is the guilty party; and (3) the accused will be convicted and the jury will assess the penalty at death. *Ex parte Alexander,* 608 S.W.2d 928, 930 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Hammond,* 540 S.W.2d 328, 330 (Tex.Crim.App.1976); *Ex parte Wilson,* 527 S.W.2d 310, 311 (Tex.Crim. App.1975). The issues the jury must consider for assessing death are:

(1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(2) in cases in which the jury charge at the guilt or innocence phase permitted the jury to find the defendant guilty as a party under sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

TEX.CODE CRIM.P.ANN. art. 37.071 (Vernon Supp.1993).

If the jury unanimously answers "yes" to the above issues, to impose the death sentence it must then unanimously answer "no" to the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than death be imposed.

TEX.CODE CRIM.P.ANN. art. 37.071 (Vernon Supp.1993).

Appellant does not dispute that the facts show the first prong of "proof evident"— that the offense of capital murder has been committed. Rather, he contends the State has failed to link him sufficiently to the crime to satisfy the "proof evident" test. Thus, the issues before this Court are whether the State has shown by clear and strong evidence (1) that appellant committed the crime, and (2) that the jury will convict and assess death as the punishment.

■ The Texas Rules of Criminal Evidence apply in both habeas corpus hearings

and proceedings to deny bail. *Garcia v. State*, 775 S.W.2d 879, 881 (Tex.App.—San Antonio 1989, no pet.); TEX.R.CRIM.EVID. 1101. If a party properly objects, hearsay evidence is not admissible in these hearings. TEX.R.CRIM.EVID. 802. However, unobjected-to hearsay evidence does have probative value and should be considered in determining the sufficiency of the evidence. *Chambers v. State*, 711 S.W.2d 240, 245–46 (Tex.Crim.App.1986). Thus, to determine the propriety of the trial judge's finding of "proof evident," there must be sufficient competent evidence in the record to support the three-part test. In addition, the State's burden of proof for denial of bail is not proof beyond a reasonable doubt, but "by clear and strong" evidence, described as a "substantial showing" of guilt. *Rivera v. State*, 725 S.W.2d 311, 312 (Tex.App.—Corpus Christi 1986, no pet.).

■ On appeal, the decision of the trial court is entitled to weight, but the appellate court has a duty to independently examine the evidence to determine if the bail was properly denied. *Ex parte Alexander*, 608 S.W.2d at 930; *Ex parte Hammond*, 540 S.W.2d at 331; *Ex parte Wilson*, 527 S.W.2d at 311. In addition, the appellate court should refrain from commenting on the sufficiency of the evidence of guilt where the case has not yet been tried on the merits. *Ex parte Wilson*, 527 S.W.2d at 311. We also do not need to resolve questions of admissibility if the record contains sufficient competent evidence to support a finding of proof evident. *Ex parte Richardson*, 750 S.W.2d 896, 899 (Tex. App.—Amarillo 1988, pet. ref'd).

■ Appellant's first point of error asserts that the trial court erred in finding "proof evident" to deny bail because the State submitted insufficient evidence "by relying solely on the testimony of fire investigators/law enforcement personnel, and scene photographs." As authority, appellant relies on *Roy v. State*, 834 S.W.2d 558 (Tex.App.—Houston [14th Dist.] 1992, no pet.). *Roy* held that the State failed to establish "proof evident" when the only evidence it submitted in the bail hearing consisted of pictures of the deceased, reports of the officers about the scene, and a statement by appellant that he stabbed the complainant when the complainant came at him with a knife and threatened to "have him, dead or alive, sexually." *Id.* at 559. Thus, in *Roy*, the State's own proof showed self-defense; by contrast, the record before us shows no exculpatory evidence. Further, the case before us differs from *Roy* in that our case contains witness testimony in addition to that of crime scene investigators, reports, and photos, including that of jailer Eldridge and deputy sheriff Beal, discussed in point of error two. We overrule appellant's first point of error.

In appellant's second point of error, he alleges that the trial court erred in admitting certain alleged hearsay statements. The rules of evidence are applicable in hearings to deny bail, Tex.R.Crim.Evid. 1101(c)(3)(C), and the State must carry its burden by introducing admissible evidence, or inadmissible evidence to which the defendant failed to properly object.

■ The State presented evidence from two law enforcement officers who heard inculpatory statements by appellant over an electronic jail monitoring system on the day appellant was placed in jail. Shawn Lee Eldridge, a Burleson County jailer, testified that he personally had placed appellant in cell two of the jail and appellant's alleged accomplice, Robert Carter, in cell one; that appellant and Carter were the only persons confined in those cells; and that the cells face each other across the four to five foot wide hallway, with a window in each cell door.

Eldridge testified that the Burleson County jail, a converted residence, has a two-way intercom system between a central control monitor panel and each cell; that the monitor panel is located in or near the kitchen; and that a person at the monitor panel can turn a switch and hear conversation within a cell. While a cell inmate would have no way of knowing if the switch had been turned to allow conversation within the cell to be heard, the inmate could see, within the cell, a metal panel on the cell wall "with little holes in it for a speaker and a button to push" to get the

jailer's or kitchen personnel's attention. Eldridge testified the system was left on "periodically" to monitor cell conversations "for security reasons;" however, the intercom system for cell one, Carter's cell, was not working.

Eldridge testified that, over the intercom system for cell two, he heard appellant say to Carter, "Yeah, I did it and don't say a thing about it. Don't say nothing about it. You keep your mouth shut." Eldridge testified that he was personally familiar with appellant's voice and recognized appellant as the speaker.

Deputy Sheriff Ronnie Beal testified that he was in the monitoring room during the same evening and heard a voice from cell one or cell two state "that he had done the job for him and to keep his damn mouth shut and let them make their case." He also testified that he heard the same voice state "Cookie had made up a story for them to help them and that they had to protect her or she could go down for life." Beal testified he was not personally familiar with appellant's voice, but that the monitoring system indicated the voice came from cell one or two. Because other evidence showed the intercom for cell one was not working, the fact finder was entitled to conclude the voice came from cell two, appellant's cell.

Appellant asserts that both Eldridge and Beal testified they were unfamiliar with and were unable to identify the speaker as appellant. However, this assertion is refuted by Eldridge's testimony that he was personally familiar with appellant's voice. Appellant also contends that the State presented no evidence to link the statement to the case before us. Both appellant and Carter were in jail for one offense only, the offense here at issue. However, the link is a question of fact for the trier of fact; the circumstantial evidence in the record is sufficient, such that the trial judge did not abuse his discretion in deciding the statement was directed to the case at hand. These incriminating statements were not obtained as a result of custodial interrogations, nor were they induced by trickery or connivance of state agents.

■ Appellant further asserts that the statements recounted by the witnesses were inadmissible hearsay, admitted in violation of his sixth amendment right of confrontation. However, TEX.R.CRIM.EVID. 801(e) states that a statement is not hearsay if it is the party's own statement offered against him. Thus, appellant's hearsay argument has no merit.

■ Appellant's final argument with respect to these statements by jailer Eldridge and deputy Beal is that they were procured by the use of a monitoring system in violation of the Texas wire tap statute, TEX. CODE CRIM.P.ANN. art. 18.20 (Vernon Supp. 1993). Article 18.20 prohibits use of the contents of any intercepted oral, wire or electronic communication, in any trial, hearing or other matter. *Id.* Section 1(2) provides that an oral communication means "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." *Id.*

In interpreting the Texas statute, it is appropriate to consider the interpretation of the federal statute on which it was modeled. *Castillo v. State*, 810 S.W.2d 180, 183 (Tex.Crim.App.1990). The federal wire tap statute was passed to protect the privacy of oral communications because of Congress' concern that extensive wiretapping was occurring without legal sanction or consent. 18 U.S.C. § 2510 (1988) (from the Congressional findings). The legislative history of the federal statute reveals that Congress' intent was to protect persons engaged in oral communications under circumstances justifying an expectation of privacy. *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir.1978).

Persons in jail generally have no expectation of privacy, because "[i]n prison, official surveillance has traditionally been the order of the day." *United States v. Harrelson*, 754 F.2d 1153, 1170 (5th Cir.1985) (citing *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962)). Appellant was, or should have been, aware of the monitoring system, with its visible speaker system on his cell wall.

Further, appellant's and Carter's conversation across the hallway between the two cells was subject to being overheard by persons in the hallway but out of view from inside the two cells. Thus, the conversation took place with no reasonable expectation of privacy. We hold the conversation between appellant and Carter was not protected by the wire tap statute.

We make no comment on the admissibility of the remaining evidence, because the admissions discussed are sufficiently clear and strong evidence to establish that appellant is connected with the capital crime, that he is the guilty party, and that he will be convicted. Thus, the first two prongs of the proof evident test are met.

■ To satisfy the last prong of the "proof evident" test, the State must prove by clear and strong evidence that the jury will assess the death penalty. *Ex parte Alexander*, 608 S.W.2d at 930. If the circumstances of a capital offense are severe enough, they may be sufficient to support a finding of probable future violence. *Ex parte Alexander*, 608 S.W.2d at 930; TEX. CODE CRIM.P.ANN. art. 37.071 (Vernon Supp. 1993). In addition, proof of extraneous offenses, including narcotics violations, are relevant to determine appellants' propensity for future violent acts. *Ex parte McKenzie*, 777 S.W.2d 746, 751 (Tex.App.— Beaumont 1989, no pet.); *Ex parte Alexander*, 608 S.W.2d at 930.

In this case, six people died; four victims were less than ten years old. The gruesome and violent nature of this crime is detailed in the State Fire Marshal's report, which appellant offered into evidence without limitation as defendant's exhibit four. Some of the evidence in this report is hearsay, but has probative value because the parties did not object. *Chambers*, 711 S.W.2d at 245–46. The report reveals that all the victims were shot, stabbed, or shot and stabbed multiple times and then set on fire. The youngest victims, a boy and a girl, were four years old. The girl suffered stab wounds to her head that penetrated her skull into her brain. She received other stab wounds that penetrated through her torso into her heart, lung and intestine. The boy also received stab wounds that penetrated into his brain, throat, lung, jugular vein, and through his palm and the bone of his right thumb. The six-year-old girl was stabbed in the head 12 times, several of which penetrated into her brain. The nine-year old girl received stab wounds to her head and chest, penetrating her brain, heart and lungs. The adult and the teenager received even more wounds. The teenage girl was shot three times in the head and twice in her mouth. She was stabbed numerous times in her head and chest, and received a fracture to her forehead and a wound under each breast that punctured her lung and spleen. The adult, who was the grandmother of the four youngest children and the mother of the teenager, was stabbed over 30 times. The bodies of all of the victims smelled of gasoline.

Appellant is presently serving probations for three felony convictions, two for delivery of marijuana and one for delivery of cocaine. The severity of the primary offense, together with appellant's background, are sufficient to support a finding by the trial court that he is a continuing threat to society. In addition, if appellant is tried under the law of parties, the acts he is alleged to have committed are sufficiently severe to support a finding under TEX. CODE CRIM.P.ANN. art. 37.071(2) (Vernon Supp.1993) that he deliberately intended to take life or anticipated that life would be taken. Appellant did not testify, nor did he offer any mitigating evidence.

On these facts, we find the trial court did not err in finding "proof evident" that a jury would find, under art. 37.071(1), that appellant constitutes a continuing threat to society. We find that the State presented sufficient, competent testimony to support its burden of showing "proof evident" by clear and strong evidence. Appellant's second point of error is overruled.

The judgment is affirmed.