### EX PARTE HARRY P. FALL.

No. 10199.   Delivered April 14, 1926.

Bail denied on rehearing June 16, 1926.

**1.—Habeas Corpus—Bail Properly Refused.**

Where, on a habeas corpus hearing on application for bail, the facts established by the testimony do not make out a case of an unexplained killing, nor one of self-defense, we are unable to believe that the record discloses an abuse of the discretion of the trial judge in his conclusion that upon a trial before a jury which heard only this testimony, they would be warranted in inflicting the death penalty.

ON REHEARING.

**2.—Same—Continued.**

It is the conclusion of a majority of the court that the question of bail was correctly disposed of in our original opinion. Presiding Judge Morrow has reached a different conclusion. The motion for rehearing is overruled.

Appeal from the District Court of Matagorda County. Tried below before the Hon. M. S. Munson, Judge.

Appeal from a judgment denying bail, sought under a habeas corpus proceeding before the District Judge in Matagorda County. Bail denied.

*W . E. De Vant, Pat M. Neff* and *Geo. P. King*, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appeal from a judgment denying bail sought under a habeas corpus proceeding before the District Judge of Matagorda County.

Appellant was charged with killing Mr. and Mrs. Sanborn. Appellant's wife and Mrs. Sanborn were sisters, and for many years appellant had looked after large properties belonging to Mrs. Sanborn. According to the testimony of a witness this business relation had ceased or was about to terminate. Appellant occupied with his family a house in McLennan County belonging to Mrs. Sanborn. The Sanborns lived in Matagorda County. On the day preceding the homicide that night, appellant and his son came to the Sanborn home. Some time in the night between eleven and twelve o'clock, on some character of notification by appellant, the station agent, who lived a few hundred yards from the Sanborn home, went to said house. He found Mrs. Sanborn on the floor of the sitting room, dead, and an iron bar or poker near her hand. There were wounds made by five bullets, in her body. Sanborn lay on the floor not far away, a knife near his body. He was shot three times but was not dead, and lived until about eight o'clock the next day. From statements made by him in the nature of dying declarations it was learned that appellant demanded $20,000.00 for his services in looking after said property, and that Mrs. Sanborn said she would see about it, that appellant then shot the woman and Sanborn. The testimony seems to support the conclusion that Sanborn was shot while sitting in a chair. All the wounds in his body slanted from higher entrances to lower exits. His feet, when first found after the affair, were near a chair. Beside the cushion in this chair a bullet was found, and in the back of said chair a dent was observed such as might have been made by a bullet. Two bullets went through Sanborn's body. From the dying declarations above referred

to it further appears that after the shooting appellant put the poker by the body of Mrs. Sanborn and the knife by that of her husband. The knife was Sanborn's. He stated that appellant had borrowed it to sharpen a pencil. Under a microscope crumbs of lead and markings as of the lead of a lead pencil were found on the blade of the knife. The state introduced, by the station agent, declarations of Sanborn that appellant shot him, and appellant sought to introduce what he said to the station agent when he reached his dwelling and told him to go down to the Sanborn house.

Ordinarily we decline to discuss in proceedings for bail questions relating to the admissibility of offered testimony, such proceeding being before the court. We have no means of knowing, in this case, how soon after the killing the conversation between appellant and the agent took place. Nothing appears shedding light on the apparent mental attitude of appellant, and we make no statement as to the admissibility of such declarations in a proceeding other than that in a proceeding for bail, before the court's liberality is allowed. Giving to what was stated by appellant to said station agent consideration, and admitting that it puts self-defense in the case resting solely on said statement, we are of opinion that the testimony of the state so completely overturns and defeats the defensive theories arising from appellant's said statement, as to have justified the refusal of bail. Same substantially shows appellant for years to have managed the large estate of Mrs. Sanborn,—apparently ending this relation and demanding a large sum of money for services,—his claim taken under consideration; he had borrowed the knife of the husband of the owner of the estate. The parties are apparently alone. Appellant shoots the woman a number of times and then her husband, the latter not having had time to get up from his chair. Powder burns appeared on the bodies of both the husband and wife. Five bullets struck the woman and three the man. The bullets are lead, and would seem to indicate the use of two pistols, or of one reloaded. After the man and his wife were on the floor the accused put the poker by the woman's body and the borrowed knife by that of the man. At some time later the accused notifies a neighbor who says, according to his statement set out in the bill of exceptions, that appellant told him he had had trouble with the folks and has to shoot his way out, and' that said neighbor would see the situation when he got down there. This is a condensed summary of the testimony, and to us it

seems to warrant the action of the learned trial judge in denying bail. We do not deem these facts to make out a case of an unexplained killing, nor one on self-defense such as would demand that bail be granted. Ex Parte Ross, 94 Tex. Crim. Rep. 313. We are unable to believe the record discloses an abuse of the discretion of the trial judge in his conclusion that upon a trial before a jury which heard only this testimony, they would be warranted in inflicting the death penalty.

The judgment denying bail is affirmed.        *Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is the conclusion of the majority of the Court that the question of bail was correctly disposed of in our original opinion, and to further write upon it would largely be a repetition of what was there said. Presiding Judge Morrow has reached a different conclusion and will probably write his views later.

The motion for rehearing is overruled.        *Overruled.*

### DISSENTING OPINION.

MORROW, PRESIDING JUDGE.—Without any discussion of the evidence in detail my conclusion is that divers inferences touching the incidents of the homicide may be drawn from the testimony of those witnesses for the state who appeared to have been disinterested. Considering the record in its entirety, taking note of the state's evidence and the sources from which it comes, and giving effect to the exculpatory testimony which was not considered by the learned trial judge, I have, on reconsideration and reflection, concluded that there is not "proof evident" of a case in which the jury, in the due administration of the law, would probably inflict the death penalty. See Ex Parte Young, 87 Tex. Crim. Rep. 413, and cases herein cited; Ex Parte Haley, 204 S. W. 330; Ex Parte Townsley, 220 S. W. 1092.