**Ex parte Damon Jerome RICHARDSON.**

No. 07–88–0001–CR.

Court of Appeals of Texas, Amarillo.

May 18, 1988.

Discretionary Review Refused July 13, 1988.

Mike Brown, Clifford Brown, Brown, Harding, Brown, Tabor, & Fargason, Lubbock, for appellant.

He bears no fault for the inability of the State to sustain the conviction.

Travis Ware, Criminal Dist. Atty., Michael West, Asst. Criminal Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

By application for writ of habeas corpus, appellant Damon Jerome Richardson sought his release on reasonable bail after he had been denied bail upon his indictment for capital murder. Following an evidentiary hearing, the trial court, finding proof evident that appellant committed the offense charged and would be capitally punished, denied bail.

With two points of error, appellant contends that the evidence is insufficient to constitute proof evident of a capital offense. The points will be overruled and the judgment will be affirmed.

Appellant is one of four persons individually charged by separate indictments with intentionally and knowingly murdering Napoleon Ellison, Quinnie Smith, and Vivian Webb during the same criminal transaction. The indictment charges capital murder. Tex.Penal Code Ann. § 19.03(a)(6)(A) (Vernon Supp.1988).

Bail may be denied to one charged with capital murder when the proof is evident. Tex. Const. art. I, § 11. To authorize the denial of bail, the State has the burden to establish that the proof is evident by producing "evidence [that] is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense of capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted but that the jury will return findings which will require a sentence of death." *Ex parte Wilson*, 527 S.W.2d 310, 311 (Tex.Cr.App. 1975).

Although the trial court's finding of proof evident is entitled to weight, this Court has the duty to independently determine from an examination of the evidence adduced at the hearing whether bail was properly denied. In making this determination, this Court will, as is customary, refrain from unnecessarily detailing the evidentiary facts and commenting upon the sufficiency of the evidence since the case is yet to be tried on its merits. *Id.*

Police officers discovered the bodies of Napoleon Ellison, Quinnie Smith, and Vivian Webb in a house in east Lubbock. The body of Ellison was in the living room; the bodies of Smith and Webb were in the northeast bedroom. Each had been shot. The bullet holes in the bodies were inflicted, according to a policeman, by blasts from a shotgun and an automatic weapon. Appellant was connected to the murders primarily by the evidence of Anita Hanson and by the testimony of Clemente Hernandez.

The evidence of Anita Hanson was adduced through her prior written statements and her testimony. Hanson, who had executed at least six written statements in which she admittedly never told the complete truth, heard appellant, who thought Napoleon Ellison was cheating him out of money Ellison received for selling appellant's cocaine, threaten the lives of Ellison and his family. Once she heard appellant say, "I'm going to end up killing Napoleon." Later, shortly before the murder, she heard appellant, replying to a question asked by Lambert Wilson, say, "We're going to knock off Napoleon, his mama and his whole family." Upon hearing this, Hanson requested to be taken home.

Hanson was being taken home in a car driven by Lambert Wilson and also occupied by Michael Dewayne Stearnes when, without objection by Hanson, Wilson stopped the car near Ellison's house. Wilson, telling Hanson to stay in the car and that they were going over there to scare Ellison, got out of the car with a gun, an uzi, to which he had attached a silencer. He and Stearnes went to the trunk of the car and "got out a long gun." Wilson and Stearnes joined Rodney Childress, who was standing on the corner, and the three walked to Ellison's house.

After waiting for some minutes, Hanson got out of the car and walked toward Ellison's house. She had reached the driveway when she heard a shot, described as a

loud boom, coming from inside Ellison's house. She entered and saw appellant, who had a pistol, and Wilson, with the uzi, standing in front of Ellison, who was in a chair and bleeding from his chest.

Inquiring about what had happened, Hanson was told that appellant made Childress shoot Webb, and she learned that Michael Dewayne Stearnes had killed Smith and Webb. Upon Ellison's request for Hanson to help him, she asked appellant if they could call a doctor. Appellant replied, "No," adding that if Ellison lived, they all would go to jail.

Then, appellant took the uzi from Wilson, gave it to Hanson, and told her that she had to shoot Ellison. When she refused, appellant told her that she would kill Ellison or he would kill her.

Hanson closed her eyes and fired three shots. She thought she might have missed the first shot because appellant, who was mad, said, "Damnit, Anita." After she finished firing, Ellison was dead. When the group was leaving the house, appellant told Hanson that if she told anybody, he would kill her.

Clemente Hernandez testified that while he was lying in bed in a motor home near the murder scene, he heard a shotgun blast, and a few seconds later, he heard a series of high-pitched blasts like a machine-gun. He looked through a window and saw, some five feet away, a female walking toward the direction from which the gun-shots came. Later, he identified a photo-graph of Anita Hanson as being a person with the same hair style and build as the female he saw.

Hernandez laid down in bed, and then he heard three male voices coming from the same direction. One male voice was that of a person who "was having trouble word-ing his sentence or speaking. He was hav-ing trouble like he was stuttering." Her-nandez heard the person say, "They needed to get the f___ out of there."

Three months later in court, Hernandez listened to a tape interview of appellant by a newscaster. Hernandez said that appel-lant's voice on the tape seemed to be, and sounded like, the same male voice he had heard the morning of the murders, al-though he would not say positively that it was the same voice.

Sergeant F.C. Hargraves of the Lubbock Police Department had known appellant for 15 or 20 years, and had spoken to him in person. The sergeant testified that appel-lant speaks with a distinct stutter on occa-sion, particularly when he is excited, and has done so for some 10 years.

■ Appellant's first-point contention that the evidence is insufficient to consti-tute proof evident of a capital offense is focused on the proof of his guilt as a party to capital murder. In a systematic develop-ment of his contention, appellant begins with the premise that the State relies upon the testimony of Hanson to prove that he is a party to the murders alleged in the indict-ment. He next asserts that Hanson, by judicially confessing to the murder of Elli-son, is an accomplice as a matter of law, *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Cr.App.1987), and absent corroborative evi-dence tending to connect him to the mur-ders, her testimony is not proof evident of his guilt. *Ex parte Mitchell*, 601 S.W.2d 376, 377 (Tex.Cr.App.1980). He then sub-mits that the testimony of Hernandez, the admission of which will be seriously ques-tioned at the trial on the merits, does not furnish the necessary corroboration. This results, he argues, because the testimony, contradicting Hanson's testimony as to the time of the offense and in other particu-lars, shows no more than his presence and flight from the scene, which do not prove his guilt. *Ysasaga v. State*, 444 S.W.2d 305, 308 (Tex.Cr.App.1969). Therefore, ap-pellant concludes, there is no proof evident of a capital offense so as to deny him bail.

The State disputes the assertion that Hanson is an accomplice, *i.e.*, one who could be prosecuted for the murders with which appellant is charged. *Smith v. State*, 721 S.W.2d 844, 851 (Tex.Cr.App. 1986). The State proposes that Hanson could not be prosecuted for the crime be-cause the evidence shows she acted under duress and it does not show that her forced involvement caused the death of Ellison.

The State's disputation will not be addressed, since it is an invitation for a prohibited comment on the sufficiency of the evidence.

■ Accepting, *arguendo*, that Hanson is an accomplice, appellant does not challenge the complete case she evidenced against him as a party to capital murder. The question, then, is whether Hanson's evidence is corroborated by other evidence tending to connect appellant with the commission of the murders. *Reed v. State*, 744 S.W.2d 112, 124–25 (Tex.Cr.App.1988).

■ In considering the evidence adduced apart from that given by Hanson, the question of the admissibility of Hernandez's testimony will not be resolved, for at this pretrial bail proceeding, the question is whether the evidence heard by the trial court is proof evident of capital murder. *Ex parte Fall*, 104 Tex.Cr.R. 515, 284 S.W. 593, 594 (1926). With Hanson's evidence eliminated, as it must be, from consideration, there remains evidence from the police sergeant that three persons were murdered during the same criminal transaction, and testimony by Hernandez that appellant was at the scene of the crime immediately after Hernandez heard the shots. This evidence is for consideration in determining whether there is sufficient independent evidence to corroborate Hanson's evidence. *Reed v. State, supra*, at 125–27. Hernandez also testified to appellant's exclamation and rapid departure, a flight which is a consideration with other evidence tending to connect him to the commission of the offense. *Cruz v. State*, 690 S.W.2d 246, 250 (Tex.Cr.App.1985).

The cumulative weight of this independent evidence tends to connect appellant with the commission of the offense and, therefore, is sufficient corroboration of Hanson's evidence. *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968). Given the complete case made against appellant by Hanson's evidence and sufficient corroborative evidence tending to connect him to the offense, there is proof evident that appellant is a guilty party. The first point of error is overruled.

■ Referring to the facts developed at the hearing, appellant contends that the evidence failed to prove he personally murdered more than one person in a single criminal transaction, and shows that if he may be convicted at all, it is only by reason of the application of the law of the parties. Tex.Penal Code Ann. § 7.02 (Vernon 1974). He then presents, with his second point, the novel contention that proof evident of a capital offense is lacking because, as a matter of law, section 19.03(a)(6)(A) applies only to one person who by his own conduct personally murdered more than one person during the same criminal transaction. In support of the presentation, he resorts to the legislative history of the section and the construction to be given its words and phrases, and opts for the application of the Rule of Lenity.

During the presentation, appellant candidly concedes that the Court of Criminal Appeals has held that the law of parties announced in sections 7.01 and 7.02 of the Penal Code is applicable to capital murder cases arising under the first five subdivisions of section 19.03(a), citing *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984); *English v. State*, 592 S.W.2d 949 (Tex.Cr.App.1980); *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr.App.1979); *Ruiz v. State*, 579 S.W.2d 206 (Tex.Cr.App.1979); and *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976). Nevertheless, appellant suggests that the cases are questionable authority for parties liability in capital murder cases, his theory being that the holdings were made without analysis or discussion of the legislative history of the statute. He invites the analysis and discussion in this appeal. The invitation is declined.

Specifically, the Court of Criminal Appeals has held that the law of parties is applicable at the guilt-innocence stage of a capital murder offense. *See, e.g., Meanes v. State*, 668 S.W.2d 366, 375 (Tex.Cr.App. 1983). This Court is bound by that pronouncement of the law. *See Abdnor v. Ovard*, 653 S.W.2d 793, 794 (Tex.Cr.App. 1983); *Hill v. State*, 625 S.W.2d 803, 806 (Tex.App.—Houston [14th Dist.] 1981), *aff'd*, 640 S.W.2d 879 (Tex.Cr.App.1982). Although the court of last resort in crimi-

nal matters has not directly applied its holding to capital murder under section 19.-03(a)(6), the same holding logically applies, for subdivision (6) merely adds to the original five subdivisions of section 19.03(a) another aggravating factor that constitutes capital murder. This conclusion is strengthened by the fact that in adding subdivision (6), the Legislature, presumed to be aware of the application of the law of parties to a capital murder offense, *Drake v. State*, 686 S.W.2d 935, 943 (Tex.Cr.App. 1985), did not exempt the application of the law of parties from its operation.

Consequently, we hold that the law of parties applies to the guilt-innocence stage of the capital murder offense denounced by section 19.03(a)(6)(A). The second ground of error is overruled.

The judgment is affirmed.