Affirmed and Memorandum Opinion filed May 19, 2011.

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00462-CR

___________________

 

Natasha Rashenet Johnson, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 263rd District Court

Harris County,
Texas



Trial Court Cause No. 1224590

 



 

 

MEMORANDUM OPINION

A jury
found appellant Natasha Rashenet Johnson guilty of serious bodily injury to a
child and sentenced her to fifty years’ imprisonment.  Johnson brings this appeal, contending that (1) the evidence is
legally insufficient to support her conviction; (2) the evidence is factually
insufficient to support her conviction; (3) the trial court erred in admitting
letters Johnson had written from jail because the letters were seized without a
warrant and in violation of her Miranda rights; (4) the trial court
erred in admitting duplicative and unfairly prejudicial photos of the complainant’s
injury; and (5) she received ineffective assistance of counsel.  We affirm.  

I

            Natasha
Rashanet Johnson was charged with serious bodily injury to a child following
the discovery that her daughter, 15-month-old G.P., had sustained second-degree
burns to her hand.  On March 6, 2007, Tyiesha Woods, Johnson’s niece, was at
Johnson’s apartment when she noticed G.P. had a sock over her hand that was
secured at the wrist by what appeared to be a hair band.  Woods asked Johnson
about the sock, and Johnson explained she had put it on G.P.’s hand to prevent
her from sucking her thumb.  

            The
next morning, Johnson asked Woods to babysit her children while she went
fishing with her boyfriend, Terrance Smith, who was referred to throughout the trial
as “Boo.”  The children were dropped off between 10:00 and 10:30 a.m., and G.P.
still had the sock fastened to her hand.  Woods testified G.P. was “fussy” and
could not be consoled, so Woods removed the sock and saw that G.P.’s hand was
“swollen” and “messed up.”  Woods immediately called a neighbor, Cynthia
Walter, for assistance.  Walter testified that upon arriving at the apartment,
Woods was “crying and shaking.”  G.P.’s hand, Walter testified, was “black,
blue, [and] purple” and “looked horrible.”  Walter retrieved medicine from her
apartment and applied Neosporin, Vaseline, and an ice pack to G.P.’s hand.             

Walter suggested they
immediately call the police about G.P.’s injury, but Woods demurred because she
was afraid the authorities would think she injured the child.  Woods instead
called Johnson and asked her to return and take G.P. to the hospital.  Woods
testified Johnson “just said okay and hung up” but that she “sounded
concerned.”  When Johnson did not immediately return, Woods called her again
and proceeded to call her several times throughout the day urging her to return
and take G.P. to the hospital.  During one conversation, Woods testified
Johnson asked why Woods had removed the sock and to whom she had shown G.P.’s
hand.  Johnson did not return until approximately 11:00 p.m. that night.  Woods
testified that Johnson did not come inside the apartment to retrieve her
children, but that the children left the apartment on their own to meet Johnson
and Smith in their car, with Johnson’s oldest son carrying G.P.  

            After
picking up the children, Johnson and Smith drove to Smith’s house.  Smith
called 911 at 11:04 p.m., and Houston firefighter and EMT Sergio Buentello
testified he and other first responders were dispatched to the house in
reference to a “bite call.”  Upon arriving at the scene, Buentello found
Johnson holding G.P.  First responders began tending to G.P., whose hand
Buentello testified was swollen and blistering.  Buentello testified G.P.’s
injuries were inconsistent with a bite injury.  Johnson told Buentello she did
not know how G.P.’s hand had been injured, and did not mention anything about G.P.
sucking her thumb.  Buentello testified G.P.’s injury appeared to be a burn,
and that the injury showed signs of child abuse.  When asked why he suspected
child abuse, Buentello testified:

Goes back to the symmetrical line that goes around the
wrist.  Usually with accidents there will be some type of splashing on the arm,
just put her hand on something hot.  And how deep the burn was, how far up her
arm was.  Usually when you dip your hand in hot water or something, you sort of
react to it.  So for her to get her arm that far in the water was . . . [w]as a
red flag. 

Buentello
also testified parents of injured children are “usually hard to control,” but
that Johnson did not cry or seem excessively worried. 

Both G.P. and Johnson
were taken by ambulance to the emergency room at Lyndon B. Johnson General
Hospital, but G.P. was transferred to Children’s Memorial Hospital shortly
afterward.  She was examined the following day by Dr. Rebecca Girardet, a
physician board certified in general pediatrics and child-abuse pediatrics. 
Dr. Girardet diagnosed G.P.’s injury as a second-degree burn, and also observed
scarring on G.P.’s abdomen that Johnson said resulted from injuries incurred
when G.P. “was trying to walk outside.”  Dr. Girardet observed a clear line of
demarcation and no splash patterns, which she testified was consistent with her
hand being immersed in a hot liquid.  Dr. Girardet further opined that G.P.’s
injuries were not consistent with Johnson’s statements that G.P.’s thumb had
been red and swollen for three days after she developed a small cut on the side
of her thumb, or that G.P. had been sucking her thumb and had a sock put over
her hand with a band wrapped around her wrist.  Dr. Girardet described the
injury as serious and painful with the possibility of scarring, loss of
function, and infection.  Dr. Girardet further observed G.P. was “a little
malnourished” and “small for her age,” with both her weight and length below the
norm for an average 15-month-old.  G.P. was hospitalized until March 16, 2007,
after which she was placed in foster care.  A member of G.P.’s foster family
described how G.P.’s hand had to be cleaned, medicated, and wrapped, and
testified a nurse came to their home daily for weeks to change the dressing.

The State also offered
into evidence several letters Johnson wrote from jail, pointing the jury to several
excerpts, including: 

“tell him [Johnson’s attorney] that I did do what thay
saying”

“Its fuck[ed] up that I have to do this time I did do it” 

“Let him [k]now that I did do that to my baby” 

“Let him know that I did do what thay saying” 

“Let me know I did do what thay saying. Let him now”

Johnson testified
that in some instances she accidentally wrote “did” instead of “didn’t,” and in others wrote
“did” in reference only to placing the sock on G.P.’s hand.  Johnson claimed
the mistakes were a result of “writing too fast.”  She denied burning G.P.’s
hand, insisting instead that she put the sock on G.P.’s hand to prevent her
from sucking her thumb after a small cut had become infected, and that she had
tied the “tie bow thing” too tightly such that it cut off circulation to the
hand.  Johnson testified the sock was on G.P.’s hand for about a day and a half
before she dropped her children off to be babysat by Woods.  Upon receiving the
first phone call from Woods concerning G.P.’s hand, Johnson testified she and
Smith immediately began to return to pick the children up, but that the drive between
Kemah and Houston was “9 or 10 hours and probably a little more than that,”
which she attributed in part to being “in traffic.”  Nonetheless, Johnson testified
she did not recall her time of arrival to pick up the children being delayed
until 11:00 p.m.  Upon arriving, Johnson testified that she stayed in the car
while the children came outside to meet her because she was “worn out, tired.” 
Johnson further testified she told the medics who arrived at Smith’s house that
she didn’t know what happened to G.P.’s hand because she was “scared” and
“afraid.”  

When Johnson denied
making phone calls to Smith while in jail, the prosecution refreshed her memory
outside the presence of the jury with a recording of a phone call.  When the
jury returned, the State cross-examined Johnson without objection regarding
several portions of the conversation, including Smith’s suggestion that she cry
in court.  Johnson also agreed that when Smith asked her if she burned G.P.’s
hand, Johnson said, “I’m going to tell ‘em, Boo.  I’m going to talk.  I’m going
to let them know everything.  I didn’t intend to, I was just trying to help my
baby.”  Johnson also testified she did not believe Woods was responsible for G.P.’s
injury.  The jury found Johnson guilty of serious bodily injury to a child and
sentenced her to fifty years’ imprisonment.  This appeal followed. 

II

            In
her first and second issues, Johnson claims the evidence is legally and factually
insufficient to support her conviction because a rational trier of fact could
not have found her guilty beyond a reasonable doubt.  Johnson argues the
evidence is insufficient because (1) there is no evidence directly connecting
her to the injury or to a deadly weapon; (2) there is no evidence that she
delayed seeking medical attention for G.P. once made aware of the baby’s
condition; (3) there is no physical evidence tying her to the injury; (4) the
evidence was inconclusive as to the babysitter’s involvement; (5) there was no
evidence ruling out a third party’s responsibility; (6) there was no evidence
she was criminally negligent or reckless; and (7) there was no deadly weapon
introduced into evidence.  

A
majority of the judges on the Court of Criminal Appeals have determined that
the Jackson v. Virginia legal-sufficiency standard is the only standard
a reviewing court should apply in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt.  Brooks v. State, 323
S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by
Keller, P.J., Keasler, and Cochran, J.J.); id. at 926 (Cochran, J., concurring,
joined by Womack, J.) (same conclusion as plurality).  Accordingly, we
will analyze Johnson’s factual-sufficiency issue under the Jackson v.
Virginia standard and ask only if the evidence against him was legally
sufficient to sustain a verdict of guilty beyond a reasonable doubt.  See
id. at 912 (plurality op.); Pomier v. State, 326 S.W.3d 373, 378
(Tex. App.—Houston [14th Dist.] 2010, no pet.). 

In a legal-sufficiency
review, we examine all of the evidence in the light most favorable to the
verdict to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 433 U.S. 307, 319 (1979).  This standard of review applies to
cases involving both direct and circumstantial evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Although we consider everything
presented at trial, we do not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).    

We note initially that
Johnson’s complaints that there was insufficient evidence connecting her to a
deadly weapon do not warrant consideration because use of a deadly weapon was
not an element of the crime for which Johnson was tried.  Although the
indictment originally included a paragraph concerning use of a deadly weapon,
the State abandoned the paragraph before the trial on the merits commenced. 
The paragraph was removed from the indictment as read to the jury, and the jury
charge contained no instructions concerning use of a deadly weapon.  

Dr. Girardet testified
that G.P.’s hand had been burned by immersion in a hot liquid, and that her
injuries were inconsistent with Johnson’s statement that the hand had become
red and swollen after G.P.’s thumb was cut.  Dr. Girardet also testified G.P.
appeared slightly malnourished and was below the average weight for her age.  Like
Dr. Girardet, Buentello also testified that it appeared G.P.’s hand had been
immersed in liquid, and that her injuries suggested child abuse.  

Johnson further admitted
to placing a sock over G.P.’s hand.  First responders initially responded to a
“bite” call, but when medics arrived Johnson said she did not know what happened
to G.P.’s hand, although she would later tell Dr. Girardet that a cut on her
thumb had become infected.  The jury also heard evidence that Johnson did not
return to pick G.P. up for approximately eleven hours after being notified by
the babysitter of the injury, and that when she did return she did not come
inside to pick G.P. up, choosing instead to wait in her car.  Rather than take G.P.
directly to a hospital, Johnson drove to Smith’s house, where it was Smith, not
Johnson, who called 911.  The jury was also entitled to give weight to letters
Johnson had written from jail, several of which indicated she “did do that” to G.P. 


To the extent no
physical evidence was presented directly tying Johnson to G.P.’s injury, none
was needed.  Circumstantial evidence is as probative as direct evidence in
establishing guilt, and circumstantial evidence alone can be sufficient to
establish guilt.  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007); see also Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref’d) (rejecting argument that lack of physical
evidence rendered evidence insufficient).  

And contrary to
Johnson’s assertions, there was evidence that Johnson delayed seeking medical
attention for G.P.  First, G.P. had already been injured when Woods’ assumed
her care.  The jury could have inferred Johnson was aware of the extent of G.P.’s
injury since she admittedly placed a sock over the hand.  But even if she were
unaware of the severity of the injury, Woods’ called to inform her as much
shortly after Johnson dropped off G.P.  Nonetheless, Johnson did not return
from fishing with Smith for nearly twelve hours.  When she did, it was Smith,
not Johnson, who called 911 after returning to his home.  

Johnson’s argument that
the evidence is “inconclusive” as to the babysitter’s involvement is equally
unavailing.  Woods denied harming the child in any way, and even if Johnson
testified she believed Woods caused the injuries, the jury would have been
entitled to believe Woods.  See Mosley, 983 S.W.2d at 254.  But Johnson
herself testified she did not believe Woods injured G.P. in any way. 
Furthermore, although Johnson contends there was no evidence ruling out a third
party, none was needed.  The jury could have rationally determined, based on
the evidence presented, that Johnson was guilty beyond a reasonable doubt.  We
overrule Johnson’s first and second points of error.  

III

            In
her third issue, Johnson complains the trial court erred in admitting, over
defense counsel’s objections, a recorded phone call and five letters Johnson
wrote from prison containing statements such as “tell him [Johnson’s attorney]
that I did do what thay [sic] saying.”  On appeal, Johnson argues that admitting
the recorded phone call and letters violated both her Fourth Amendment right
against unreasonable search and seizure and her Fifth Amendment privilege
against self-incrimination.  

            The
State initially argues that Johnson failed to preserve error at trial by not
objecting every time the letters were presented.  See Hudson v. State, 675
S.W.2d 507, 511 (Tex. Crim. App. 1984).  The State acknowledges Johnson twice
objected to the letters, but contends she “did not object each and every time
such evidence was presented.”  The State further argues that Johnson has waived
this issue on appeal due to inadequate briefing.  Johnson’s brief refers only
to the trial court’s error in admitting “private letters and intercepted phone
calls,” but does not specify where in the record the inadmissible evidence
appears.  Therefore, the State argues nothing is preserved for review because
Johnson has not directed the court to the proper place in the record where the
complained-of error may be found.  See Lape v. State, 893 S.W.2d 949,
953 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d). 

            The
phone call was referred to during the State’s direct examination of an employee
of the Harris County Sheriff’s Office, and was later published outside the
presence of the jury without objection, but was never admitted into evidence. 
Therefore, nothing is presented for review.  We will, however, assume error was
preserved at trial as to the complained-of letters.[1]

            Johnson
argues the letters were inadmissible on two fronts.  First, she argues her “Miranda
v. Arizona rights were violated” by the seizure of the mail with the
specific purpose of seeking evidence against her when no warnings were given to
her that the letters were subject to review.  Second, Johnson argues the
letters should have been suppressed as the product of a warrantless search and
seizure.  

            The
State may not use any statement, whether exculpatory or inculpatory, stemming
from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against
self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Custodial
interrogation is defined as questioning initiated by law enforcement officers
after a person has been taken into custody or otherwise deprived of his freedom
of action in any significant way.  Id.  Although Johnson was in custody
when she wrote the letters that were admitted at trial, the statements were not
a product of custodial interrogation.  See Banargent v. State, 228
S.W.3d 393, 402 (Tex. App.—Houston [14th Dist.] 2007, pet. ref’d) (holding
recordings of phone calls made by defendant from prison were not the product of
custodial interrogation);  State v. Scheineman, 77 S.W.3d 810, 813 (Tex.
Crim. App. 2002) (holding no custodial interrogation occurred when the
defendant’s custodial statement was not made in response to interrogation by
law enforcement personnel but instead was made when the defendant was alone with
a co-defendant).  Therefore, Johnson’s Fifth Amendment privilege against
self-incrimination simply is not implicated.  

            Johnson’s
complaint that the letters should have been excluded as the product of a
warrantless search and seizure is also without merit.  An accused has standing
to challenge the admission of evidence obtained by a government intrusion only
if he had a legitimate expectation of privacy in the place invaded.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  The accused has the
burden of proving facts establishing a legitimate expectation of privacy.  Id. 
To carry the burden, the accused must prove (1) that by his conduct he
exhibited an actual subjective expectation of privacy, and (2) that
circumstances existed under which society was prepared to recognize his
subjective expectation as objectively reasonable.  Id.; see also
Smith v. Maryland, 442 U.S. 735, 740 (1979).  

The United States
Supreme Court long ago opined that it was “satisfied that society would insist
that the prisoner’s expectation of privacy always yield to what must be
considered the paramount interest in institutional security.”  Hudson v.
Palmer, 468 U.S. 517, 528 (1984).  Accordingly, prisoners have no
reasonable expectation of privacy in their mail.  See Stroud v.
United States, 251 U.S. 15, 21–22 (1919) (holding prisoner letters offered
at trial were not a product of unreasonable search and seizure); Salinas v.
State, 479 S.W.2d 913, 915 (Tex. Crim. App. 1972) (no error in admitting
drugs found in package sent between inmates); cf. Ex parte Graves,
853 S.W.2d 701, 705–06 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d)
(holding no privacy expectation under wiretap statute when conversation
recorded by visible speaker); Thomas v. Allsip, 836 S.W.2d 825, 828
(Tex. App.—Tyler 1992, no writ) (noting the court was unable to find any legal
authority recognizing a prisoner’s right to privacy in letters addressed to
court).  Because the trial court did not err in admitting the letters, we
overrule Johnson’s third issue.   

IV

            In
her fourth issue, Johnson complains the trial court erred in admitting several
photographs into evidence that were duplicative of other introduced photos, and
that the highly inflammatory and prejudicial nature of these photos outweighed
any probative value.  Specifically, Johnsons argues that exhibits 1, 2, 4, and
5 through 17 were offered “solely to inflame the minds of the jury,” and that
photos depicting an “unkempt” condition of Johnson’s children were not
relevant.  Exhibits 1 and 2 are pictures of all of Johnson’s children.  Exhibit
4 is a picture of G.P. undergoing treatment at the hospital and apparently
crying.  Exhibit 5 also depicts G.P. apparently crying while having her injured
hand held up to the camera.  Exhibits 5 through 13 are an assortment of
close-up pictures of G.P.’s injured hand, and exhibits 14 through 17 depict
scarring on G.P.’s abdomen.  

            The
State initially argues that nothing is presented for review as to exhibits 1
and 2 because Johnson’s counsel affirmatively stated at trial that he had “no
objection” to admission of the photos.  We agree.  When a defendant
affirmatively asserts during trial that he has “no objection” to admission of
the evidence he complains about on appeal, he waives any error in the admission
of the evidence.  Dean v. State, 749 S.W.2d 80, 82–83 (Tex. Crim. App.
1988); see also Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a).  The
State further argues that error was not preserved as to exhibits 4 through 17
because Johnson’s counsel did not re-urge his objection each time the evidence
was presented.  See Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim.
App. 1991).  We will assume error was preserved as to exhibits 4 through 17.  

We review the admission
of evidence for an abuse of discretion.  Jones v. State, 944 S.W.2d 642,
651 (Tex. Crim. App. 1996).  So long as the trial court’s decision is within
the zone of reasonable disagreement, we will not disturb it on appeal.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’ing). 

Although admissible,
relevant evidence may be excluded if its probative value is substantially
outweighed by a danger that it will unfairly prejudice, confuse, or mislead the
jury, if its inclusion will result in undue delay, or if it is needlessly
cumulative.  Tex. R. Evid. 403.  Generally, photographs are admissible if
verbal testimony about the matters depicted in the photographs would be
admissible and their probative value is not substantially outweighed by the
Rule 403 counter-factors.  Threadgill v. State, 146 S.W.3d 654, 671
(Tex. Crim. App. 2004).  Rule 403 favors the admission of relevant evidence and
carries a presumption that relevant evidence will be more probative than prejudicial. 
Id.  

A Rule 403 analysis by the trial court should include, but is not limited
to, the following factors:  (1) the probative value of the evidence; (2) the
potential of the evidence to impress the jury in some irrational but
nevertheless indelible way; (3) the time the proponent needs to develop the
evidence; and (4) the proponent=s need for the
evidence.  Montgomery, 810 S.W.2d at 389B90.  Additionally, the court should consider the form, content, and
context of the photographs, including the following factors: (1) the number of
exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5)
whether they are black and white or in color, (6) whether they are close-up,
(7) whether the body is naked or clothed, and (8) whether the body as
photographed has been altered since the crime that might enhance its
gruesomeness to the defendant’s detriment.  Narvaiz v. State, 840 S.W.2d
415, 429 (Tex. Crim. App. 1992); Long v. State, 823 S.W.2d 259, 272
(Tex. Crim. App. 1991).  

Exhibits 4 through 13 depict nothing more than the injury that formed the
basis of the charge against Johnson, while exhibits 14 through 17 depicted evidence
of injuries G.P. had previously suffered.  These exhibits served as visual
explanations of the nature, extent, and cause of G.P.’s injuries.  They were no
more gruesome than the facts of the offense itself.  See Williams v. State, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997).  Furthermore, visual evidence accompanying testimony
is most persuasive and often gives the fact finder a point of comparison
against which to test the credibility of a witness and the validity of his
conclusions.  Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App.
1999).  It was within the trial court’s discretion to determine that ten photos
depicting different angles of G.P.’s injured hand and four photos depicting
scarring on G.P.’s abdomen were not unnecessarily cumulative or unfairly
prejudicial to Johnson.  See Montgomery v. State, 810 S.W.2d at
391.  We overrule Johnson’s fourth issue. 

V

In her last issue,
Johnson complains she received ineffective assistance of counsel.  Johnson
maintains her counsel was ineffective by (1) failing to request a pretrial
hearing or file a motion to suppress evidence regarding Johnson’s letters from
jail and recorded phone call; (2) failing to preserve error or seek further
relief to sustained objections; (3) failing to object to testimony from a
member of G.P.’s foster family as irrelevant and prejudicial; (4) failing to
object to the State’s improper closing argument; (5) failing to object to the
State’s sidebar that a red band with a perfect line is common in child abuse
cases; (6) failing to object to leading; and (7) failing to request an
instruction on the lesser-included offense of deadly conduct.  

An accused is entitled
to reasonably effective assistance of counsel.  Strickland v. Washington,
466 U.S. 668, 686 (1984); King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  In reviewing claims of ineffective assistance of counsel, we apply
a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005) (citing Strickland, 466 U.S. at 687).  To establish
ineffective assistance, an appellant must prove by a preponderance of the
evidence that (1) his trial counsel’s representation fell below an objective
standard of reasonableness, and (2) there is a reasonable probability that, but
for counsel’s deficiency, the result of the trial would have been different.  Strickland,
466 U.S. at 687; Mallet v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App.
2002).  A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Mallett, 65 S.W.3d at 63.

When evaluating a claim of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  In making such an
evaluation, any judicial review must be highly deferential to trial counsel and
avoid the distorting effects of hindsight.  Ingham v. State, 679 S.W.2d
503, 509 (Tex. Crim. App. 1984) (citing Strickland, 466 U.S. at 689).  Accordingly,
there is a strong presumption that counsel’s conduct fell within a wide range
of reasonable representation.  Salinas, 163 S.W.3d at 740.  The
appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective.  Thompson, 9 S.W.3d at 813 (citing Cannon v.
State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).  To overcome the
presumption of reasonable professional assistance, any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Thompson, 9
S.W.3d at 814.  Direct appeal is usually an inadequate vehicle for raising such
a claim because the record is generally undeveloped.  Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  When the record is silent as to
trial counsel’s strategy, we will not conclude that defense counsel’s
assistance was ineffective unless the challenged conduct was “‘so outrageous
that no competent attorney would have engaged in it.’”  Id. (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  

The record in this case is
silent as to the reasons for counsel’s actions.  Johnson has therefore failed
to rebut the presumption that counsel’s conduct fell within the range of
reasonable representation.  See Salinas, 163 S.W.3d at 740.  As such, we
do not judge counsel’s strategic decisions in hindsight; rather, the review of
counsel’s representation is highly deferential and presumes that his actions
were reasonable.  See Thompson, 9 S.W.3d at 812–13; see also Lane
v. State, 257 S.W.3d 22, 26 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref’d).  

Nor was counsel’s conduct
“so outrageous that no competent attorney would have engaged in it.”  See Garcia,
57 S.W.3d at 440.  To the extent that any of counsel’s alleged shortcomings
were indeed not supported by sound strategy, isolated instances in the record
reflecting errors of commission or omission do not cause counsel to become
ineffective, nor can ineffective assistance of counsel be established by
isolating or separating out one portion of the trial counsel’s performance for
examination.  Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App.
1986).  Similarly, assuming without deciding a lesser-included offense
instruction was proper, failure to request an instruction on a lesser-included
offense may be a reasonable trial strategy.  See, e.g., Ex parte
White, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004).  

            Counsel’s decision not to object
to allegedly leading questions, improper arguments, sidebar remarks, or to the
testimony of a member of G.P.’s foster family as irrelevant, also does not
render counsel’s performance ineffective on the grounds that no strategy could
exist for his actions.  Assuming valid objections could have been lodged, we
have previously held that choosing not to object can be a trial strategy.  Henderson
v. State, 704 S.W.2d 536, 538 (Tex. App.—Houston [14th Dist.] 1986, pet.
ref’d).  (holding that the failure to object to every introduction of improper
evidence or questioning does not indicate that appellant's representation was
ineffective).  

            Finally, Johnson’s complaint that
counsel did not file a motion to suppress or seek a pretrial hearing to exclude
from evidence Johnson’s letters and recorded phone calls from jail is without
merit.  When an appellant makes no showing that a ruling on pretrial motions
would have changed anything in the case, he has failed to establish ineffective
assistance.  Roberson v. State, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993). 
Here, counsel properly objected to the complained-of letters when the State
sought to introduce them at trial.  There is no suggestion that the court’s
decision to admit the letters would have been different if the matter was taken
up at a pretrial hearing.  And, as previously discussed, the phone call
recording was played outside the presence of the jury and was not admitted into
evidence.  

            Absent a record containing an
explanation of counsel’s strategy, Johnson has failed to rebut the presumption
that counsel’s conduct fell within the range of reasonable representation. 
Furthermore, Johnson points us to no conduct that is so outrageous that no
competent attorney could have engaged in it.  We overrule Johnson’s fifth
issue.  

* * *

For the
foregoing reasons, we affirm the trial court’s judgment.                                                                                                         

                                                                        

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison 

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] Although the State
correctly points out that Johnson did not cite to specific exhibits in her
brief, we decline to find waiver because the letters Johnson complains of are
readily identifiable in the record.  We distinguish this case from those in
which the court is asked to sift through volumes of the record without
direction, searching for the exhibits the appellants complains of, in which
case we would be more inclined to find the argument had been waived because of
inadequate briefing.